**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **TOTAL SERVICE TELECOM, INC.,** | |
| Plaintiff, | Case No. 13 C 8768 |
| v. | Judge Harry D. Leinenweber |
| **DIRE COMMUNICATIONS, LCC,** | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Dire Communications LLC's ("Dire") Motion for Partial Summary Judgment against Plaintiff Total Service Telecom, Inc. ("TST") [ECF No. 35]. For the reasons stated herein, the Motion is denied.

### I.  BACKGROUND

TST initiated this litigation by filing a breach of contract claim against Dire on November 4, 2013. TST brought the original claim in Illinois state court, and Dire removed the case to this Court on the basis of diversity under 28 U.S.C. § 1332. TST alleged that Dire had breached a Subcontract Agreement (the "Subcontract") that the parties had executed on November 14, 2012. Dire responded to the Complaint by filing a two-count Counterclaim of its own, alleging that TST was actually the breaching party under the terms of the Subcontract.

TST is a general contractor that builds cell towers and provides various other telecommunications construction services. TST executed the Subcontract with Dire in furtherance of a higher-tier contract TST had previously executed with several larger telecommunications companies. According to the terms of the Subcontract, Dire was to furnish services, labor, and materials at various cell tower sites owned or operated by TST's higher-tier contractors.

During the life of the Subcontract, Dire performed work for TST on approximately seventy-five cell tower sites throughout Minnesota, Wisconsin, and Illinois. The majority of the cell tower sites – 60-plus - were in Dire's home state of Minnesota. Although there were some minor issues associated with those sites, neither side disputes that Dire was paid in full for the work it performed in Minnesota. Following the work on the Minnesota sites, TST offered Dire work in other markets. The present dispute centers around work Dire performed for TST at twelve cell tower sites in and around Chicago, Illinois (the "Chicago Sites"), and four cell tower sites in and around Milwaukee, Wisconsin (the "Milwaukee Sites"). Each party has asserted a breach of contract claim against the other as a result of the dispute.

Dire has moved for summary judgment on Count I of its Counterclaim. Dire has not moved for summary judgment on its defamation claim – Count II of its Counterclaim. Rather, Dire

states that the defamation claim will be dropped if it is granted summary judgment on the breach of contract claim. Dire's breach of contract claim is premised on the theory that Dire substantially performed its obligations under the Subcontract, but TST breached by withholding payment on work done by Dire on the Milwaukee and Chicago sites. TST has not filed a summary judgment motion of its own. Instead, TST alleges that there are many issues of material fact related to the issues of performance, breach, and damages. Accordingly, TST only asks the Court to deny Dire's Motion so these issues can be decided at trial.

## II. LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Material facts are those that affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The moving party may meet its burden by showing "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). If the moving party satisfies its initial burden, the non-moving party must demonstrate with evidence "that a triable issue of fact remains on issues for which

[it] bears the burden of proof." *Knight v. Wiseman,* 590 F.3d 458, 463-64 (7th Cir. 2009).

In determining whether a genuine issue of material fact exists, the Court construes all evidence in the light most favorable to the non-moving party. *See, Bellaver v. Quanex Corp.,* 200 F.3d 485, 491-92 (7th Cir. 2000). The judge's role at summary judgment is not to make credibility determinations or weigh the evidence. *Washington v. Haupert,* 481 F.3d 543, 550 (7th Cir. 2007). In other words, summary judgment is not to be used to resolve evidentiary conflicts, but merely to identify their presence or absence. *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir. 1994).

To help ease the Court's task of deciding summary judgment motions, the Northern District of Illinois has adopted Local Rule 56.1, which requires certain filings in support of and in opposition to motions for summary judgment. Local Rule 56.1(a)(3) requires the movant to provide a Statement of Material Facts as to which it contends there is no genuine dispute. The statement must be in the form of numbered paragraphs with specific references to the parts of the record or other supporting materials relied upon. The non-movant must reply to each paragraph, either admitting that the statement is uncontested or stating that it disagrees, specifically citing to supporting materials showing that there is a genuine factual dispute.

L.R. 56.1(b)(3)(A), (B). The non-movant may also supply a statement of additional facts, if any, that would defeat summary judgment, again in the form of numbered paragraphs with supporting citations to the record. L.R. 56.1(b)(3)(C). The moving party must then reply to the statement of additional facts, paragraph by paragraph, admitting the statement or contesting it with specific citations to supporting materials.

The Seventh Circuit has stressed that facts are to be set forth in Rule 56.1 statements, and it is not the role of the Court to parse the parties' exhibits to construct the facts. It bears repeating that judges are not "like pigs, hunting for truffles buried in briefs." *See, e.g., United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir. 1991). Put simply, "[it] is not the Court's job to sift through the record to find evidence to support a party's claim." *Meng v. Aramark Corp.*, No. 12-cv-8232, 2015 WL 1396253, at *1 (N.D. Ill. Mar. 24, 2015) (citing *Davis v. Carter,* 452 F.3d 686, 692 (7th Cir. 2006)). "Rather, it is '[a]n advocate's job . . . to make it easy for the court to rule in [her] client's favor.'" *Id.* (alterations in original) (quoting *Dal Pozzo v. Basic Machinery Co.,* 463 F.3d 609, 613 (7th Cir. 2006)).

## III. ANALYSIS

### A. Local Rule 56.1 Statements

In the present case, neither party has abided by the letter or the spirit of Local Rule 56.1. Each party has filed documents with the Court that contain myriad procedural, structural, and grammatical errors that have made it needlessly difficult for the Court to rule. After reviewing the parties' deficient filings and immersing itself in the factual record, the Court remains uncertain as to what *actually* transpired between the parties in this case. The following examples highlight just a few of the difficulties faced by the Court in ruling on this Motion.

To start, the Court notes that neither party bothered to include a narrative factual description of the case in its respective legal memorandum. Instead, both parties chose to rely on their Rule 56.1 statements by incorporating them directly into their briefs. Courts in this district have made it clear that this practice is improper and serves only to frustrate the intended purpose of Rule 56.1. *See, e.g., Duchossois Indus., Inc., v. Crawford & Co.,* No. 99 C 3766, 2001 WL 59031, at *1 (N.D. Ill. Jan. 19, 2001) (stating that the parties' improper reliance on Rule 56.1 statements in their legal memoranda indicated that their lawyers misunderstood the purpose of the rule). Rule 56.1 statements "are not intended to be substitutes for a statement of facts section of a memorandum of law." *Id.*

By omitting statement of fact sections from their respective briefs, the parties have failed to provide the Court with a sufficient description of the underlying events of this case. The parties' briefs assume that the Court is as familiar as the parties are with the underlying facts of the case, jumping directly to the legal arguments without first explaining the underlying dispute to the Court. "Rather than enlighten the court, the briefs have served only to confuse, focusing entirely on the narrow legal disputes between the parties without providing sufficient background information to determine the import of those disputes." *Id*.

The omission of statement of fact sections was compounded by other deficiencies contained within the parties' filings. Both parties submitted documents containing additional procedural problems - and countless other missteps – that caused concern for the Court and severely damaged the cogency of the parties' arguments. For instance, Dire asks this Court to accept that there are no issues of material fact regarding its breach of contract claim against TST, but Dire's own filings contain glaring factual inconsistencies, which cannot be overlooked. For example, at certain points in its Summary Judgment brief Dire states that it has been paid by TST in full for the work it performed on *two* of the twelve Chicago Sites. (Def.'s Br. in Supp. of its Mot. for. Summary Judgment ("Def.'s Br."), ECF No. 25 at 1, 4). But, in its

Rule 56.1 Statement, Dire states it is an undisputed fact that TST has paid Dire the full amounts owed for *three* of the twelve Chicago Sites. (Def.'s Rule 56.1 Stmt. of Undisputed Facts ("Def.'s Stmt."), ECF No. 36 ¶ 34). Although the difference between payments on two sites versus three sites is not dispositive of whether TST performed its end of the Subcontract, it would certainly affect other elements of the case that Dire contends are undisputed, such as the amount of damages Dire is entitled to.

Typos such as this would be easier to overlook if they were few and far between, but Dire's filings are rife with additional problems. For example, Dire's Rule 56.1 Statement improperly contains multiple assertions of fact within individual paragraphs, and often cites to the wrong exhibits. Dire's filings also misquote the language of the Subcontract, misspell the names of key witnesses, and contain sections that are incomplete. For example, in the introduction to Section II of Dire's Brief in Support of Summary Judgment, Dire argues that no genuine issue of material fact exists regarding TST's alleged breach. Dire concludes this section with the following incomplete sentence: "Accordingly, summary judgment in favor of Dire must be granted in the sum of at least." The brief then proceeds onto the next section without concluding. (Def.'s Br. at 3). While none of these missteps were fatal to Dire, they seriously hindered the

Court's progress and often failed to comply with the spirit and the letter of Local Rule 56.1.

Dire was not alone in filing deficient papers with the Court. In addition to filing documents containing various factual inconsistencies, citations to the wrong parts of the record, and other simple errors, TST filed responses to Dire's Rule 56.1 Statement of Facts that were wholly improper and tended to complicate, rather than simplify, the Court's task. The following example highlights this problem. One of Dire's statements of fact says:

> 34. Dire invoiced TST on or before July 31, 2013 a total of $267,000 for the base line authorized rates associated with the work it performed at 12 work sites in the Chicago market. TST has paid the full base invoiced amounts owed for 3 sites totaling $69,900, leaving the sum of $197,100 unpaid. (Ex. 15, September 2013 email string between TST and NSN regarding Dire Payments Owed, chart on p. 3, Ex. 13, Dire Invoices for the 9 unpaid sites.)

(Def.'s Rule 56.1 Stmt., ECF No. 36 ¶ 34). The appropriate response to this paragraph is simple. According to Local Rule 56.1(b), TST should either admit the asserted facts, or controvert them with citations to materials demonstrating the existence of a genuine factual dispute. Instead of supplying such a response, however, TST filed the following tome:

> Response: Paragraph 34 is disputed as to sums due and unpaid to Dire. The Dire Invoices are all dated June 1, 2013 with one dated May 17, 2013. (Ex. 13) As of September 2013, TST had not received payment from NSN

for the work at the Chicago projects, thus payment was not due Dire. (Ex. 1, Part III, p. 2, Sec. 9.3, p. 9; Ex. 15, p. 2-3, 7) Furthermore, Dire failed to complete its work at the Chicago projects and TST had to complete the work at the Chicago projects and correct Dire's deficiencies. (Ex. 5, C. Sokolowski Dep., p. 39:7-19, p. 41:7-17, p. 43:19-44:6; Ex. 6, A. Waver Dep., p 93:14-17, 94: 5-8, 149:12-14; R. Farina Dep., p. 42: 9-11, 45: 23-46:11, 46:20-47:3, 75: 15-21, 183:10-15; 187: 4-7) TST was allowed to correct Dire's work not done in accordance with the Subcontract and deduct from the amounts owed Dire. (Ex. 1, Sec. 13, 14, p. 11, Sec. 20.4 p. 14). The referenced September 2013 e-mail chain does not identify payments owed to Dire. The e-mail chain is entitled Dire/TST missing Payment Claim. (Ex. 15) On September 11, 2013, TST's Anthony Waver and Ron Farnia received an e-mail from Brian Hefferman from NSN. (Ex. 15, p. 7-8) Brian Hefferman had been contacted by Dire and Dire claimed that it was owed $500,000.00 from TST for work it performed in Minnesota. (Id.) Dire's representations to Brian Hefferman were in direct contradiction to paragraph 24 of Dire's Undisputed Facts in which Dire acknowledges full payment from TST for the work provided in Minnesota. (See ¶ 24 of this pleading) Dire also told Brian Hefferman that it was owed $300,000 for work provided in Chicago and Milwaukee. (Ex. 15, p. 7-8)[.] On September 11, 2013, Anthony Waver responded to Brian Hefferman's e-mail and stated that the information he was provided was inaccurate and there was outstanding issues with Dire. (Id., p. 7) Anthony Waver also reiterated that TST had not been paid by NSN for the work provided in Chicago. (Id.) On September 17, 2013, Anthony Waver and Ron Farnia received another e-mail from Brian Hefferman from NSN as Dire had showed up unannounced at the NSN Minnesota office threatening to lien project sites. (Id.) Anthony Waivers responded to the September 17, 2013 e-mail from Brian Hefferman and pointed out that Dire actually owed TST money on the Minnesota projects and NSN had still not paid TST for the work it completed in Chicago. (Id.) Anthony Waver also informed Brian Hefferman that Dire had not completed its work on the Chicago projects and TST was receiving zero cooperation from Dire. (Id.; Ex. 6, A. Waver Dep., p. 172:9-16) On September 19, 2013 Antony Waver informed Robert Todt of NSN that TST has not been paid for the Chicago project by NSN and that TST would be discussing payment amounts with Dire focusing on Dire's deficiencies in work performed, insufficient SOW

> (scope of work) as well as TST executing the majority of
> the work to meet NSN guidelines. (Ex. 15, p. 2-3) In
> the follow up September 20, 2013, e-mail, Anthony Waver
> again requests payment from NSN and disputes amounts
> owed to Dire as grossly inaccurate. (Ex. 15, p. 2)
> (TST's Rule 56.1 Statement of Facts, ¶¶ 7-19, 24-28).

(TST's Resp. to Dire's Rule 56.1 Stmt of Undisputed Facts, ECF No. 46 ¶ 34). This long, convoluted response – like many of TST's other responses – is improper. Instead of using the response simply to admit to the facts or controvert them by pointing to other parts of the record, TST uses the response to provide the Court with two pages of argument presenting TST's interpretation of the facts. A Rule 56.1(b) response is not a platform for a party to present its argument. Some of the arguments may be appropriate in TST's brief, but not here, where the only question is whether the asserted fact is contested. *See, Portis v. Chicago,* 510 F.Supp.2d 461, 464 (N.D. Ill. 2007).

In sum, the parties' aforementioned failures have "utterly thwarted the usefulness of the [Rule] 56.1 Statements as road maps to assist the court in pointing to the specific undisputed evidence that supports the parties' position." *See, id.* at 465 (internal quotation marks and citation omitted). The deficient filings greatly undermined the persuasiveness of the parties' arguments and made it unnecessarily difficult for the Court to determine what transpired between the parties and what each party's obligations were under the Subcontract. Nonetheless, the

Court has immersed itself in the record to determine whether Dire is entitled to summary judgment.

## B. Dire's Breach of Contract Claim

In order to succeed on its Motion for Summary Judgment, Dire must demonstrate an absence of any issue of material fact regarding all elements of its breach of contract claim, which are: (1) the existence of a valid and enforceable contract; (2) substantial performance by Dire; (3) a breach by TST; and (4) resultant damages. *See, e.g., Reger Dev., LLC v. Nat'l City Bank,* 592 F.3d 759, 764 (7th Cir. 2010). While both parties acknowledge the validity of the Subcontract, they are in disagreement over whether material issues of fact exist regarding the remaining three elements of Dire's breach of contract claim.

Although the parties have made it difficult to decipher the workings of the Subcontract, it seems clear to the Court that triable issues of material fact exist that preclude summary judgment in Dire's favor. Dire alleges breach of contract on the theory that Dire substantially performed its obligations under the Subcontract, but TST breached by withholding payment on work done by Dire on the Milwaukee and Chicago sites. The parties addressed the Chicago and Milwaukee work separately; the Court will do the same.

### 1. *The Chicago Sites*

In May 2013, TST offered Dire work in the Chicago market. Although the Parties are in dispute as to how much work was actually performed, the evidence shows that between May 9, 2013 and June 17, 2013, Dire performed at least *some* physical work at twelve cell tower sites in the Chicago market. Dire contends that it substantially performed the work at all twelve sites and is due payment from TST. Substantial performance is evident, according to Dire, because the typical work at any cell cite is divided between physical work and closeout work that the parties call "C & I work." Dire asserts that the physical work accounts for three-fourths of a job, while the C & I work accounts for one-fourth. Dire contends that because TST has not disputed that Dire performed the physical work, *i.e.,* 75 percent of the entire job, there can be no dispute that Dire substantially performed under the Subcontract

TST acknowledges this typical split between physical work and C & I work, but this does not lead the Court to conclude that Dire performed its end of the bargain. Dire does not dispute that following any physical on-site work, a "closeout process" was required to complete fully work on a cell site. This process "entailed capturing photographs and other documentation to demonstrate that the work was properly completed so as to complete someone's file on the work." (Def.'s Rule 56.1 Stmt., ECF No. 36

¶ 21). Dire needed to complete these "closeout packages" and submit them to TST so that TST could then turn them in to the higher-tier contractors for approval and subsequent payment.

Even though this final C & I work only accounted for 25 percent or less of Dire's total work, it appears that Dire was still contractually obligated to complete the C & I work in order to complete fully the work and get paid. The Subcontract clearly stated that Dire would only be paid by TST after TST had been paid by the higher-tier contractor. And, even though it is not mentioned in the express language of the Subcontract, the parties agree that the higher-tier contractor would only approve the work and issue payment to TST following the submission and approval of closeout packages on each and every cell tower site. Dire has pointed to nothing in the contractual provisions – or any other documentation - showing that payment for the physical construction work should be considered separately from the C & I work and closeout procedures. Viewing these facts in the light most favorable to TST, a reasonable jury might conclude that by failing to complete and submit the closeout packages in a timely manner, Dire had failed to perform under the Subcontract.

### 2. *The Milwaukee Sites*

Dire also agreed to perform construction on four cell tower sites in and around Milwaukee. According to TST, Dire failed to complete any of the four Milwaukee Sites. Dire, however, contends

that it is entitled to payments for work that it completed on two of the four sites.

Dire again attempts to use the distinction between physical work and C & I work to establish that it substantially performed its end of the bargain. Unlike the Chicago Sites, however, Dire acknowledges that there are issues of material fact regarding its completion of closeout procedures for the two Milwaukee Sites. In an effort to avoid the obvious problem this creates for Dire's Summary Judgment Motion, Dire "agrees" to withdraw any claims for C & I work and only assert claims for the remaining physical work Dire performed. This argument runs into the same problem as Dire's argument regarding the Chicago Sites: namely, that the Subcontract required Dire to perform the C & I work before TST could get paid by the higher-tier contractor, which in turn would allow TST to pay Dire. Dire's strategy appears to be that, by stipulating that it did not perform about one-fourth of the work at the Milwaukee Sites, it has eliminated any factual dispute and therefore can win summary judgment. In reality, that stipulation has the opposite effect; viewing the facts in the light most favorable to TST, Dire's stipulation amounts to an admission that it breached the Subcontract by not completing the C & I work.

In sum, the parties' briefing has made it difficult for the Court to rule on the Motion, but despite this difficulty, the Court is convinced that there are serious factual disputes in this

case that preclude summary judgment. Summary judgment is not to be used to resolve evidentiary conflicts, but merely to identify their presence or absence. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). "Before it can properly be granted, therefore, the court must have a very high degree of confidence that any disagreement over the facts is spurious." *Door Sys., Inc. v. Pro-Line Door Sys., Inc.*, 83 F.3d 169, 172 (7th Cir. 1996). The Court can hardly have the degree of confidence necessary to grant summary judgment when it can hardly grasp what the facts are based on the parties' briefing.

## IV. CONCLUSION

For reasons stated herein, Dire's Motion for Partial Summary Judgment [ECF No. 35] is denied.

**IT IS SO ORDERED.**

 Harry D. Leinenweber, Judge
 United States District Court

Dated: September 28, 2015